John E. Hill, SBN 45338
Michael P. Guta, SBN 121509
LAW OFFICES OF JOHN E. HILL
8105 Edgewater Drive, Ste 100
Oakland, CA 94621
(510) 588-1000
Facsimile:(510) 729-6333

Henry E. Weil, Esq., DC BAR NO. 149971A
BELLI, WEIL & GROZBEAN, P.C.
111 Rockville Pike, Ste 980
Rockville, MD 20850-4191
(301) 738-5700
'Facsimile: (301) 738-5708

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAHINTAJ BAKHTIAR, Individually and as Next-of-Kin and Representative of the Estate of DR. CHAPOUR BAKHTIAR, and on behalf of GOUDARD BAKHTIAR, a Minor, MANIJEH ASSAD  BAKHTIARI,<br><br>          Plaintiffs,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, Ministry of Foreign Affairs Khomeini Avenue United Nations Street Tehran, Iran, and<br><br>IRANIAN MINISTRY OF INFORMATION AND SECURITY Pasdaran Avenue Golestan Yekom Tehran, Iran, | Case No.  02 0092 HHK<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>(Federal § 1605(a)(7) and Flatow Amendment Claim/Loss of Solatium; Federal § 1605(a)(7) and Flatow Amendment Claim/Intentional Infliction of Emotional Distress; Violation of Customary International Law-Loss of Solatium; Common Law of California - Intentional Infliction of Emotional Distress; Common Law of California - Loss of Solatium) |

FIRST AMENDED COMPLAINT FOR DAMAGES

060727 2                    1

1.       Plaintiff SHAHINTAJ BAKHTIAR, by counsel, brings this survival and wrongful death action in her own right, on behalf of her minor child GOUDARD BAKHTIAR and her deceased husband, DR. CHAPOUR BAKHTIAR and on behalf of the Estate of DR. CHAPOUR BAKHTIAR as decedent's next of kin and representative.  Plaintiff MANIJEH ASSAD BAKHTIARI brings this claim on behalf of herself.  The matter arises from the terrorist acts undertaken at the behest and under the direction of Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, which directly and proximately resulted in the assassination of DR. BAKHTIAR.  Pursuant to the Foreign Service Immunities Act of 1976, as amended, 28 U.S.C. § 1605(a)(7), Plaintiff hereby moves for judgment against the Islamic Republic of Iran and the Iranian Ministry of Information and Security on the grounds and in the amount set forth below.

**PARTIES**

2  Plaintiff SHAHINTAJ BAKHTIAR, a resident of California, is the surviving spouse of DR. CHAPOUR BAKHTIAR, who died from injuries sustained during an assassination attack in Paris, France.  Plaintiff is and was at the time of the assassination, a United States national within the meaning of 28 U.S.C. § 1605(a)(7)(B)(ii).  Plaintiff SHAHINTAJ BAKHTIAR also is the mother of DR. CHAPOUR BAKHTIAR's son , GOUDARD BAKHTIAR, and his step daughter MANIJEH ASSAD BAKHTIARI.  SHAHINTAJ BAKHTIAR, GOUDARD BAKHTIAR, and MANIJEH ASSAD BAKHTIARI were citizens of the United States domiciled in California  at the time of the assassination of DR. CHAPOUR BAKHTIAR, and remain citizens of the United States.

3.       Defendant THE ISLAMIC REPUBLIC OF IRAN is a foreign state and has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administrat8ion Act of 1979 [50 U.S.C. App. § 2405(j)].

4.      Defendant IRANIAN MINISTRY OF INFORMATION AND SECURITY (hereinafter "MOIS") is the Iranian intelligence service through which Iran has sponsored and directed a network of individuals who have engaged in assassinations and other acts of terrorism on a worldwide basis against opponents of the Islamic Regime, including the act of extrajudicial killing of DR. CHAPOUR BAKHTIAR  described below.  MOIS has been directly implicated in assassinations in Europe, Latin America, the Middle East, and the United States.

## JURISDICTION, VENUE AND CHOICE OF LAW

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1332(a)(2).

6.      Defendants THE ISLAMIC REPUBLIC OF IRAN and MOIS are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7).

7.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4).

## STATEMENT OF FACTS

8.      On Tuesday, August 6, 1991, DR CHAPOUR BAKHTIAR was stabbed to death in his son's home outside Paris, as three French police officers patrolled outside, one at the garden entrance and two others at a sentry post at the main entrance to the house.  The assassination of DR. CHAPOUR BAKHTIAR closely resembled the murder of his friend and fellow dissident Abdel Rahman Boroumand five weeks earlier.

9.      On Sunday,  August 4, 1991, Fereidum Boyer Ahmadi told DR. CHAPOUR BAKHTIAR that two supporters of the Iranian Resistance Movement of which he was the President had arrived from Tehran and wanted urgently to meet him.  DR, CHAPOUR BAKHTIAR trusted Boyer Ahmadi, describing him as his second son, and Boyer Ahmadi's name was on a list of fifteen regular visitors allowed access to the BAKHTIAR home.  DR. CHAPOUR BAKHTIAR was not aware that Boyer Ahmadi had been sent by the Iranian government earlier, in order to

FIRST AMENDED COMPLAINT FOR DAMAGES

060727 2                        3

1   gain the trust of DR. CHAPOUR BAKHTIAR, to make possible a breach of normal security

2   precautions.  Thus, on Tuesday, August 6, 1991, the three men, Boyer Ahmadi and the two

3   visitors from Tehran, were admitted to the house by the French police officers guarding the

4   outside.

5   10.      Once inside the house, Boyer Ahmadi went into the kitchen , acquired two knives, and

6   gave the knives to the two assassins.  A tremendous struggle ensued between the two assassins

7   and DR. CHAPOUR BAKHTIAR, age 76, as he fought for his life.  DR. CHAPOUR

8   BAKHTIAR received numerous injuries before he finally succumbed to the brute force of the

9   two younger men, and died.

10  11.      DR. CHAPOUR BAKHTIAR's assistant, Soroush Katibeh, was also in the house, and

11  when he heard the fierce engagement in the office area, he rushed in and he too was savagely and

12  repeatedly stabbed and killed.  Police later counted fifteen knife wounds in his body, and found a

13  knife blade broken off in his hip.  The scene of the killings, according to police investigators, was

14  gruesome, with blood on the floor, walls and ceiling.

15  12.      The killers then cut the house telephone line and covered DR. CHAPOUR BAKHTIAR's

16  body with a tablecloth.  The killers than waited in the house, while Boyer Ahmadi retrieved their

17  identification documents from the police guards at the security post.  Boyer Ahmadi then

18  smuggled the killers out of the house around 6:00 p.m.

19  13.      The two assassins, Mohammad Azadi and Ali Vakili Rad, were noted in the house entry

20  log by the Corps Republicaine de Securite (CRS) guard.  They had been recommended for visas

21  permitting their entry into France by Massoud Hendi, a nephew of Ayatollah Khomeini , who

22  was also an Iranian businessman with connections in France.  He formerly had been a

23  correspondent in France, for Iranian television.  Hendi later told investigators that he made the

24  recommendations for visas on orders of Mohammad Gharazi, Minister of Telecommunications of

25  the ISLAMIC REPUBLIC OF IRAN.  Hendi told the French consulate in Tehran that the two

26  men were telecommunications experts who wanted to attend a course in France, though in reality

27

28  060727 2                    4

FIRST AMENDED COMPLAINT FOR DAMAGES

1   they were agents of MOIS, who had the specific assignment of killing opponents to the

2   ISLAMIC REPUBLIC OF IRAN, abroad.  When the two assassins arrived at Orly Airport in

3   Paris, they were met by Boyer Ahmadi and taken to a secure hideout in Paris.

4   14.     Boyer Ahmadi had gained a detailed knowledge of the layout of DR. CHAPOUR

5   BAKHTIAR's son's home.  The French police believe he decided to proceed with the killing of

6   DR. CHAPOUR BAKHTIAR when, at an executive meeting of the IRM to elect a successor to

7   Mr. Boroumand after he had been assassinated,  DR. CHAPOUR BAKHTIAR announced that he

8   intended to move to a different location miles away from his son's home.

9   15.     After the BAKHTIAR assassination, the killers tried to cross the border into Switzerland,

10  using false Turkish passports, but they were turned back by alert Swiss border guards.  The

11  French border guards allowed them back into France.  The bodies at the BAKHTIAR house

12  remained undiscovered.  The plotters in Iran showed some uncertainty then, as a British

13  monitoring team in Cyprus intercepted a message from MOIS headquarters to the Iranian

14  embassy in Bonn, Germany, asking for confirmation of DR. CHAPOUR BAKHTIAR's death.

15  16.     Meanwhile, evidence of the gruesome crimes began to emerge.  A prostitute in the Bois

16  de Boulogne area of Paris found bloodstained clothing and Iranian passports issued to the

17  assassins Vakili Rad and Azadi.  Later, a taxi driver reported driving the two men to the Swiss

18  border, where a wallet found in a telephone booth at the border contained Iranian, French and

19  Swiss money, and calls from the telephone booth were traced to a number in Istanbul.  This

20  evidence led to eleven arrests, including five Iranians, three of them MOIS agents.  The eleven

21  were charged with providing false passports and visas to the assassins.

22  17.     The assassins finally succeeded in crossing from France into Switzerland, with the police

23  not far behind.  Swiss officers missed arresting the men by a few hours, in a Geneva hotel.

24  Vakili Rad was detained when found on a boat on Lake Lernan on August 21, and he was

25  subsequently extradited to France.  On September 21, Massoud Hendi, nephew of the Ayatollah

26  Khomeini who had recommended the assassins for their visas to enter France, was arrested in

27

28  060727 2                              5
                                        FIRST AMENDED COMPLAINT FOR DAMAGES

1   Paris.  He agreed to cooperate with the French police.  In his statements to French authorities,

2   Hendi implicated Minister Gharazi, the Minister of Telecommunications, and Minister Ali

3   Fallahian, Minister of State Security, as conspiring with others in DR. CHAPOUR

4   BAKHTIAR's assassination.  In the case of the latter, Ali Khamenei, Ayatollah Khomeini's

5   chosen successor as spiritual leader, had already congratulated Fallahian for his "great

6   achievements in combating and uprooting the enemies of Iran, inside and outside of the country."

7

8   18.     As far back as 1980, Iranian government assassins had attempted to kill DR CHAPOUR

9   BAKHTIAR by virtue of the "Fatwa" or sentence of death that was imposed by the Ayatollah

10  Khomeini after he took control of the reins of power in Iran.  Five such assassins made an

11  attempt in 1980.  One of them was Anis Naccache, who at the time had a Lebanese passport.

12  The assassination attempt failed, but in the effort a French woman and a police officer were

13  killed.  Four of the assassins received life sentences, and the fifth received a twenty year prison

14  sentence, for the failed attempt on the life of DR. CHAPOUR BAKHTIAR and the killings of the

15  French citizens.

16  19.     On October 22, 1991, French Judge Jean-Louis Brugiere ordered the arrest of Hossen

17  Sheikh-Attar, said to be the adviser to Mohammad Gharazi, the Iranian Minister of Post and

18  Telecommunications, on charges of being an accomplice to the assassination of DR. CHAPOUR

19  BAKHTIAR.  The warrant described Sheikh-Attar as an accomplice in murder and criminal

20  conspiracy in connection with a terrorist action, as he had assisted in arranging for the assassins

21  to be issued visas to enter France using false identities.  Sheikh-Attar's role was revealed in

22  Massoud Hendi's confession, who admitted he arranged for false Turkish passports to be issued,

23  to enable the assassins to flee from France into Switzerland.

24  20.     A third person was charged by Judge Brugiere with involvement in the assassination of

25  DR. CHAPOUR BAKHTIAR.  This person, a female intelligence officer, is believed to have

26  arranged for temporary lodgings for the assassins in Paris.

27

28  060727 2                          6

FIRST AMENDED COMPLAINT FOR DAMAGES

21.     After the killing of DR. CHAPOUR BAKHTIAR. French President Francois Mitterand postponed a planned visit to Tehran.  Immediately after news spread of the killing, Iranian newspapers, all under control of the government, rejoiced in the news, led by notable quotes in the Jahan-e-Islam on August 23, 1991 by Hashemi Rafsanjani, the President of the ISLAMIC REPUBLIC OF IRAN: "All of our government's problems are a result of instability, and we must show that we are powerful and stable by assassinating people from the oppositions."

22.     In February, 1994, Judge Brugiere, the top anti-terrorism investigator of France, determined the BAKHTIAR assassination was organized from Tehran.  Hts. report relied on records of telephone calls to Tehran, to help establish the link to the seat of the government of the ISLAMIC REPUBLIC OF IRAN.  Telephone traffic between Turkey, Switzerland (where the assassins were based before they crossed into France) and Iran revealed communications with a Tehran telephone number that the French DST counterespionage service established was used by Iranian intelligence services.

23.     In a criminal trial before a special assize anti-terrorism court in Paris, seven judges heard evidence for a month, against Ali Vakili Rad and Massoud Hendi in person, and against Mohammad Azadi, who had not been apprehended, in absentia.  All three defendants were adjudged guilty by the court.  Rad and Azadi were sentenced to life in prison, and Hendi, who cooperated with the French authorities, received a ten year sentence for his complicity in DR. CHAPOUR BAKHTIAR's assassination.

24.     The investigation remains open, as Mohammad Azadi remains at large as do other participants in the conspiracy to assassinate former Prime Minister DR. CHAPOUR BAKHTIAR.

25.     Approximately one year prior to the events giving rise to this lawsuit, Mr. Cyrus Elahi, a 47 year old Iranian dissident living in exile in Paris, and member of the Flag of Freedom Organization, an organization very similar to that of DR. CHAPOUR BAKHTIAR's Iranian Resistance Movement, was assassinated in the corridor of his apartment building.  On October

FIRST AMENDED COMPLAINT FOR DAMAGES

1   23, 1990, Mr. Elahi was found gunned down with numerous bullet wounds to the head and body.

2   26.   Based on an investigation by the French authorities, it was determined that two MOIS

3   agents, Mojtaba Mashhady and Hussein Yazdanseta, had acted on behalf of the ISLAMIC

4   REPUBLIC OF IRAN to engage in terrorist actions, including assassinations against opponents

5   of the regime.  Both were tried, convicted and prison sentences imposed by the French Supreme

6   Criminal Court.

7   27.   Subsequent to the criminal investigation, charges and eventual convictions of the killers

8   of Cyrus Elahi, a civil action was brought in the United States District Court of the District of

9   Columbia (*Elahi v. The Islamic Republic of Iran and the Iranian Ministry of Information and*

10  *Security*, No. 1-99CV-02802), in which The Hon. Joyce H. Green, United States District Judge,

11  has ordered the defendants to pay substantial monetary damages.

12  28.   Numerous other persons have been killed in various places in the world, as a result of

13  similar acts of deliberate international terrorism on the part of senior officials of the ISLAMIC

14  REPUBLIC OF IRAN.

15

16

17                                      **COUNT I**
                            **ALL PLAINTIFFS v. DEFENDANTS**
18                 **FEDERAL § 1605(A)(7) AND FLATOW AMENDMENT CLAIM/**
                        **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
19  29.   Plaintiffs hereby adopt Paragraphs 1-30 as though fully set forth herein.

20  30.   As a direct and proximate result of the willful, intentional, outrageous and reckless acts of

21  the Defendants, Plaintiffs suffered severe emotional distress as well as other damages, as set

22  forth in the foregoing Paragraphs.

23        WHEREFORE, Plaintiffs pray relief as hereinafter set forth.

24                                      **COUNT II**
                            **ALL PLAINTIFFS v. DEFENDANTS**
25                 **FEDERAL § 1605(A)(7) AND FLATOW AMENDMENT CLAIM/**
                                   **LOSS OF SOLATIUM**
26

27        _____
                                    FIRST AMENDED COMPLAINT FOR DAMAGES
28  060727 2                    8

1   31.    Plaintiffs incorporate Paragraphs 1 - 29.

2   32.    As a direct and proximate result of the willful, extreme, outrageous, wrongful, intentional

3   and  reckless acts funded, directed, aided, abetted and otherwise facilitated by the ISLAMIC

4   REPUBLIC OF IRAN, Plaintiffs have suffered extreme mental anguish, emotional pain and

5   suffering, and the loss of the society and companionship of their husband and father.

6   33.    Defendant committed the acts alleged herein maliciously, fraudulently and oppressively,

7   with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

8   amounting to malice and in conscious disregard of Plaintiff's rights.

9
10
11

**COUNT III**
**ALL PLAINTIFFS v. DEFENDANTS**
**VIOLATION OF CUSTOMARY INTERNATIONAL LAW**
**LOSS OF SOLATIUM**

12   34.Plaintiffs hereby adopt Paragraphs 1-32 as though fully set forth herein.

13   35.    As a direct and proximate result of Defendants' wilful, extreme, outrageous, intentional

14   and reckless acts, Plaintiffs have suffered damages and losses, as alleged in the foregoing

15   Paragraphs.

16          WHEREFORE, Plaintiffs pray relief as hereinafter set forth.

17
18
19
20

21
22
23

**COUNT IV**
**ALL PLAINTIFFS v. DEFENDANTS**
**COMMON LAW OF CALIFORNIA**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

24   36.    Plaintiffs hereby adopt Paragraphs 1-34 as though fully set forth herein.

25   37.    The acts described in the foregoing Paragraphs hereof constitute extreme and outrageous

26   conduct under the common law of California and the Defendants' roles in the commission

27
28   060727 2                              9

FIRST AMENDED COMPLAINT FOR DAMAGES

1  thereof constitute intentional infliction of emotional distress on the Plaintiffs.

2  38.    As a direct and proximate result of the wilful, wrongful, intentional, extreme, outrageous

3  and reckless acts of the Defendants, Plaintiffs have suffered the injuries, loss and damages

4  alleged in the foregoing Paragraphs

5         WHEREFORE, Plaintiffs pray relief as hereinafter set forth.

6                              **COUNT V**
                    **ALL PLAINTIFFS v. DEFENDANTS**
7          **COMMON LAW OF CALIFORNIA-LOSS OF SOLATIUM**

8
9  39.Plaintiffs hereby adopt Paragraphs 1-37 as though fully set forth herein.

10  40.    As a direct and proximate result of the wilful, extreme, outrageous, wrongful, intentional

11  and reckless acts of Defendants,  as alleged in the foregoing Paragraphs, Plaintiffs have suffered

12  the losses set forth  in the foregoing Paragraphs.

13
14         WHEREFORE, Plaintiffs now pray that judgment be entered against Defendants THE

15  ISLAMIC REPUBLIC OF IRAN and MOIS, jointly and severally, in the amount of

16  $30,000,000.00 in compensatory damages and an award in punitive damages to be determined by

17
18
19
20
21  the Court, in addition to costs, as well as other relief as the Court may determine to be equitable

22  and just under the circumstances.

23
24  Dated:                              LAW OFFICES OF JOHN E. HILL,

25
26                                      _____
                                        By: Michael P. Guta
27
                                        _____
28  060727 2                    10      FIRST AMENDED COMPLAINT FOR DAMAGES

1    Attorney for Plaintiff

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                        _____
28   060727 2                    11     FIRST AMENDED COMPLAINT FOR DAMAGES