1   John E. Hill, SBN 45338
    Michael P. Guta, SBN 121509
2   LAW OFFICES OF JOHN E. HILL
    8105 Edgewater Drive, Ste 100
3   Oakland, CA 94621
    (510) 588-1000
4   (510) 729-6333

5   Henry E. Weil, Esq., DC BAR NO. 149971A
    BELLI, WEIL & GROZBEAN, P.C.
6   111 Rockville Pike, Ste 980
    Rockville, MD 20850-4191
7   (301) 738-5700

8   Attorneys for Plaintiffs

9

10                 UNITED STATES DISTRICT COURT

11                    DISTRICT OF COLUMBIA

12

13   SHAHINTAJ BAKHTIAR,      )    Case No. 02 0092 HHK
    Individually and as Next-of-Kin   )
14   and Representative of the Estate   )   **AFFIDAVIT REQUESTING FOREIGN**
    of DR. CHAPOUR BAKHTIAR,   )   **MAILING**
15   and on behalf of GOUDARD     )
    BAKHTIAR, a Minor, MANIJEH   )
16   ASSAD BAKHTIARI,         )
                       )
17        Plaintiffs,          )
                       )
18   vs.                       )
                       )
19   ISLAMIC REPUBLIC OF IRAN,    )
    Ministry of Foreign Affairs      )
20   Khomeini Avenue          )
    United Nations Street         )
21   Tehran, Iran, and          )
                       )
22   IRANIAN MINISTRY OF       )
    INFORMATION AND SECURITY )
23   Pasdaran Avenue           )
    Golestan Yekom           )
24   Tehran, Iran,             )
                       )
25         Defendants.        )
                       )
26

27

28

1    I, the undersigned counsel of record for Plaintiffs, hereby request that the Clerk mail a copy

2    of the July 18, 2005 Judgment and Memorandum (including Farsi translation of the foregoing

3    documents) attached hereto as Exhibit A the head of the MINISTRY OF FOREIGN AFFAIRS OF

4    IRAN, Ministry of Foreign Affairs, by registered mail, return receipt requested, pursuant to the

5    provisions of 28 U.S.C. § 1608(a)(3) in order to accomplish service on the following defendants (1)

6    the Islamic Republic of Iran; and (2) the Iran Ministry of Information and Security.

7    Service on the defendants is not available pursuant to 28 U.S.C. § 1608(a)(1) or 28 U.S.C.

8    § 1608(a)(2).

9    I certify that this method of service is authorized by the Foreign Service Immunities Act, 28

10   U.S.C. 1608(3) and that I obtained this information by contacting the Citizen's Consular Services,

11   Department of State.

12

13   Dated:                                  BELLI, WEIL & GROZBEAN, P.C.

14

15                                           By: HENRY E. WEIL
                                             Attorneys for Plaintiffs
16

17   Dated: 1/5/11

18                                           LAW OFFICES OF JOHN E. HILL

19

20                                           By: Michael P. Guta
                                             Attorneys for Plaintiffs
21

22

23

24

25

26

27

28                                           -2-    AFFIDAVIT REQUESTING FOREIGN MAILING

# EXHIBIT A



**Global Language Services**
Translations · Interpreting
DTP · Localization

KERN Corporation
The Russ Building
235 Montgomery St., Suite 946
San Francisco, CA 94104

NOV 2 4 2009

State of : <u>California</u>

County of: <u>San Francisco</u>

Tel. (415) 433 5376
Fax (415) 433 5377
kern.sf@e-kern.com

**www.e-kern.com**

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing*
*under the laws of the State of California, is professionally engaged in the rendering of foreign*
*language translation service; that it has translated the following attached document(s)*

### TRANSLATION OF ORDER & MEMORANDUM

*from the **ENGLISH** language into the **FARSI** language*
*and that said document is a true and correct translation of the said document to the best of our*
*knowledge and belief.*

Signed by: _____

(Charlotte Sanford)
for
KERN Corporation

Subscribed and sworn to (or affirmed) before me this
23rd day of _November_____, 2009,
by Charlotte Sanford, proved to me on the basis of satisfactory
evidence to be the person who appeared before me.

_____

Notary Public, San Francisco, CA

ALEXIS CLAIRE KNUDSEN WALLACE
COMM. #1775362
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXPIRES OCT. 23, 2011

New York: KERN Corporation · 230 Park Avenue, Suite 1517 · New York, NY 10169
Tel. (212) 953 2070 · Fax (212) 953 2073 · kern.ny@e-kern.com

London: Tel. 011 44 (20) 78 31 56 00 · Frankfurt: Tel. 011 49 (69) 75 60 73-0 · Berlin: Tel. 011 49 (30) 24 72 12 50 · Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 2 61 11 60 · Hong Kong: Tel. 011 (852) 28 50 44 55 · Amsterdam: Tel. 011 31 (20) 6 39 01 19 · Lyon: Tel. 011 33 (4) 783 783 73

KERN 06/2008

دادگاه حوزه ایالات متحده امریکا

دادگاه حوزه ایالت کلمبیا

| | |
|---|---|
| شاهین تاج بختیار | |
| خواهان یا شاکی | |
| و. | قانون افراد شخصی 02- 00092(HHK) |
| جمهوری اسلامی ایران | |
| خوانده ها یا متهمان | |

حکم

شاهین تاج بختیار در درخواست حق غرامت خود با ارائه شواهد رضایت دادگاه را به موجب قانون (e) 1608 § 28 U.S.C جلب کرده است. قدرت بختیار ، منیژه اسد بختیار و وراث دیگر شاپور بختیار درخواست خود را در مورد غرامت اعلام نکرده اند. امروز شانزدهم ماه ژوئن سال 2008 است.

**حکم صادرو مقرر شده است** با توجه به درخواست ارائه شده توسط شاهین تاج بختیار ، قضاوت بر له شاهین تاج بختیار و بر علیه جمهوری اسلامی ایران و سازمان اطلاعات وامنیت جمهوری اسلامی بر پرداخت غرامت 12000000 دلار انجام شده است و همچنین،

**حکم صادر ومقرر شده است** با توجه به درخواست ارائه شده توسط قدرت بختیار، منیژه اسد بختیار و ماترک وماترک شاپور بختیار قضاوت بر له جمهوری اسلامی ایران و سازمان اطلاعات و امنیت جمهوری اسلامی ایران و برعلیه قدرت بختیار، منیژه اسد بختیار و دفتر شاپور بختیار صورت گرفته است.

هنری ه کندی، ج ر
قاضی حوزه دادگستری ایالات متحده امریکا

§دادگاه حوزه ایالات متحده امریکا
دادگاه حوزه ایالت کلمبیا

---

| |
|---|
| شاهین تاج بختیار |
| خواهان یا شاکی |
| و |
| جمهوری اسلامی ایران |
| خوانده ها یا متهمان |

قانون افراد شخصی 02 -00092(HHK)

---

**یادداشت های غیر رسمی**

این قانون پورسانتی برای کشورها و دولتهای حامی تروریسم بجز قانون مصونیت رهبران و فرمانروایان
خارجی (7,1)(a) 1605§ C.S.U 28 (FSIA) توسط شاهین تاج بختیار ("شاهین تاج") که بیوه شاپور
بختیار("شاپور") است ، بطور فردی و به نیابت از طرف وراث دیگر شاپور، پسر شاپور بختیار، قدرت
بختیار ("قدرت") و دخترخوانده شاپور،منیژه اسد بختیار ("منیژه") بر علیه جمهوری اسلامی ایران
ووزارت اطلاعات و امنیت ایران ("MOIS") که سازمان اطلاعات ایران است، فراهم کرده است.
شاپور نخست وزیر سابق ایران بود و این قانون بعد از قتل او در تاریخ 6 اگوست 1991(1370/3/17)
به مرحله اجرا درآمد. این دادگاه با پیش فرض ها و مقدمه هایی بر علیه متهمان در تاریخ 3 ماه آوریل
2007 (1385/12/13) وارد بررسی شده و یک جلسه بررسی خسارات وارده را در تاریخ
27 نوامبر 2007 (1386/11/27) به عمل آورده است. دراین جلسه بازجویی و بررسی اخطارهای قطعی
در مورد مراتب و کشف ‏———————————

---

1 خواهان و شاکی ها پرونده شکایتی تحت شماره (7)(a)1605 C.S.U 28 تشکیل داده اند. با توجه به
پورسانتی که با تایید مقامات قانون دفاع ملی در سال مالی 2008 ، نشریات L، شماره ,181-110§
1083، موقعیت 122، (2008) 44-338 ,3 ("قانون دفاع ملی") ،(7)(a)1605 §C.S.U 28 با قانون
1605A§C.S.U 28 جایگزین آن شده است. بخش (7)(a)1605 هنوز برقوانین قبلی از تاریخ 28
1605A § .C.S.U تاکید دارند. سیمون و جمهوری عراق در سوم ماه فوریه سال 2008 ، طبق قانون
1605A§ با شرایط آن جایگزین برای اختیار قانونی و حوزه صلاحیت تمام پرونده های درحال
تعلیق از (7)(a)1605 .............برای ادعا و طلب غرامات از1605A§ فراهم نمی کند، خواهان و
شاکی باید پرونده ای طبق قانون جدید با شرایط دیگر ارائه کند") بنابراین دادگاه موضوع مورد ادعای
خواهان و شاکی را طبق قانون (7)(a)1605 §C.S.U 28 بررسی و قضاوت می کند.

حقایق و نتیجه قانونی Rafii v در مورد جمهوری اسلامی ایران ووزارت اطلاعات و امنیت ، طبق شماره 01-cv-850 (D.D.C ، 2 دسامبر 2002)(یافته های رافی)2 ارائه کند. براساس موارد احراز واقعیت رافی و خاتمه قانون شواهد ارائه شده دربازجویی در مورد غرامات ، دادگاه مراتب فوق را انجام داده است.

## I. کشف و احراز حقایق

### A. سیاست ایران در مورد قتل و ازبین بردن مخالفان

1. در سال 1979 ، آیت الله خمینی بعد از رهبری و هدایت شورش و بلوایی برعلیه شاه ایران ، رهبر ایران شد .یافته های رافی3.1 .مطابق قوانین مصوب آیت الله خمینی ، ایران سیاست کشتن مخالفان را در داخل و خارج کشور اتخاذ کرد. ایران به قتل و کشتن رهبران گروه های مخالف ایرانی فوق ارتباط داده شده است:حزب دموکرات کردستان ایران، شورای ملی مقاومت، مجاهدین ، حرکت ملی برای گروه مقاومت ایران ("NAMIR") و پرچم آزادی. این قتل ها بخاطر جلوگیری از فعالیت این گروه های مقاومت ایرانی ، همانند فعالیت گروه های دیگر بوده است. جزئیات در 17-15

2. قتل و کشتار مخالفان سیاسی در سال های بعدی رژیم آیت الله خمینی کاهش یافت.اما با وجود این در اوایل سال 1989 میلادی و با پایان جنگ ایران و عراق وتعیین علی اکبر هاشمی رفسنجانی به عنوان رئیس جمهوری ایران ،
_____

2 در رافی ، دختر شاپور، فرانس مخاطب رافی ، غراماتی را برعلیه جمهوری اسلامی ایران و وزارت اطلاعات و امنیت ایران ، به علت قتل شاپور ادعا و احراز کرد.
3 بسیاری از استشهادهای یافته های رافی گزیده های کلمه به کلمه ای می باشند. برای سهولت اشاره به این موارد دادگاه از علائم جمله معترضه و درج برای مشخص کردن گزیده های کلمه به کلمه استفاده نشده است. موقعی که دادگاه یافته های کلمه به کلمه رافی را ارزیابی می کرده ، موارد اشاره مربوط به یافته های رافی را حذف کرده است، چون مربوط به استشهادهای داخلی مانند استشهادهای مربوط به صحنه های مختلف می باشند.

افزایش و بی پروایی در مورد قتل مخالفان در خارج از کشور، مانند دوره عمومی افزایش حمایت ایرانیها از تروریسم در حالت کلی ایجاد شد. مخالفان در اتریش، فرانسه ، آلمان ، عراق، ترکیه و ایالات متحده امریکا به قتل رسیدند. جزئیات در 16.

3. ایران به MOIS (سازمان اطلاعات و امنیت کشور) دستور داده بود که مخالفان جمهوری اسلامی را به قتل برسانند و از بین ببرند. در حقیقت ، آیت الله فلاحیان ، که در زمان قتل شاپور در MOIS خدمت می کرد نکات عمومی در مورد مسئولیت کشتن اعضای گروه های ایرانی در خارج را که بر علیه رژیم ایران فعالیت می کردند اعلام داشت. جزئیات در 3-4

4. از سال 1984، اداره دولتی ایالات متحده امریکا ، ایران را کشورحامی تروریسم اعلام کرد. جزئیات در 2

**B. شاپور بختیار**

5. شاپور مدرک دکتری در حقوق و فلسفه را گرفت. در طی جنگ جهانی دوم او با گروه مقاومت فرانسه در جنگ بر علیه آلمان شرکت کرد، در حرکت کارگری در ایران فعالیت کرد، و برای دموکراسی فداکاری و ایثار کرد.او توانست به آسانی به دولت شاه به پیوندد و بالاترین مناصب ها را در ادارات احراز کند. جزئیات در 10 . در مقابل شاپور در مخالفت برعلیه رژیم شاه شرکت کرد و در نتیجه فعالیت های سیاسی خود مدتی زندانی شد. در ماه ژانویه 1979 ، هنگام شورش و انقلاب آیت الله خمینی ، شاپور نخست وزیر ایران شد و به مدت سی و پنج روز خدمت کرد.جزئیات در 11.

6. بعد از سقوط دولت ، شاپور به عنوان شخصیت مرمی باقی ماند. این مورد دولت جدید ایران را نگران کرد و زندگی او را به خطر انداخت. در 14 ماه مه 1979 ، آیت الله خمینی ، یک قاضی مذهبی و رئیس دادگاه انقلاب ایران در یک مصاحبه با کیهان روزنامه رسمی ایران اعلام کرد که هدف او حذف " افراد فاسد و مفسدو فی الارض از روی کره زمین" است و بخصوص اسم شاپور را به عنوان فردی خطاب کرد که باید اعدام شود.جزئیات در 12.

عبارت " مفسدین فی الارض" بر یک *فتوا* دلالت می کند که یک قاضی مذهبی یا حاکم شرع برای اعدام شاپور صادر کرده است. این *فتوا* به مسلمانان در هرجای دنیا که بودند دستور می داد که شاپور را به قتل برسانند. آیت الله خلخالی این *فتوا* را برای قتل شاپور در 7 دسامبر 1979 تکرار و تاکید کرد. جزئیات.

7. بعد از مدتی مخفی شدن در ایران ، شاپور به پاریس جایی که NAMIR را به دکتر عبدالرحمان بوروماند بنیان گذاشته بود گریخت. NAMIR گروه عمده مخالفان ایرانی در خارج از ایران بود. جزئیات در 13.

8. در سال 1980، یک تلاش ناموفق برای قتل شاپور در پاریس انجام شد. یک مرد مسلح یک پلیس و یک نفر همسایه را در سوء قصد کشت، اما نتوانست شاپور را به قتل برساند.یک فردی که اسمش آنیش ناچاچه بود مسئول حمله شناخته شد و دادگاه فرانسوی دریافت که ناچاچه برای قتل شاپور از آیت الله خمینی پول گرفته است.جزئیات در 14.

9. بعد از تلاش برای قتل این ناموفق،  شاپور در سال 1980، شاپور تحت شرایط امنیتی زیاد و سنگین زندگی کرد. یک کامیون پلیس با تعداد زیادی افراد پلیس در مقابل منزل او نگهبانی می داد و بخش اصلی خانه او به مرکز معاونت گاردهای پلیس  درآمد که چهار پلیس مخصوص از اسکادران پلیس ضد شورش فرانسه در آن نگهبانی می دادند. بختیار رفت وآمدهای خود را در بیرون را از خانه محدود کرد ، و وقتی که او خانه خود را ترک می کرد با اتومبیل های ضد گلوله و مسلح می رفت. پسر او گای بختیار ، از افراد پلیس فرانسه بود و برای محافظت شاپور خدمت می کرد. قبل از هرکسی ، که شامل خانواده خودش می توانستند با او ملاقات کنند ، آنها باید پاسپورت ارائه می کردند و پاسپورت آنها تا خاتمه دیدار و ترک آنجا توسط پلیس نگه داشته می شد. جزئیات در 18

10. در 6 ماه اگوست 1991 ، گای بختیار پاریس را برای یک مسافرت دوروزه ترک کرد. در ساعت 5 بعد از ظهر شاپور رسید و انتظار دیدار فریدون بویراحمدی عضو  NAMIR و دستیار نزدیک خود را داشت. بویر احمدی توسط محمد آزادی  و علی وکیلی راد همراهی می شد. شاپور هرگز آزادی و راد را ملاقات نکرده بود.جزئیات در 19.

11. بویر احمدی مامور دولت ایران بود که با موفقیت به عضویت NAMIR درآمده بود. او ودو مرد دیگر شاپور و معاون او را به قتل رساندند. فورروش کاتیبه با دو کارد آشپزخانه و با تلاش زیاد بدن شاپور را قطعه قطعه کرد. جزئیات

12. قتل شاپور تا زمان برگشت پسر او گای بختیار از مسافرت در 8 ماه اگوست 1991 مشخص نشد. جزئیات

**C. نقش ایران در قتل**

13. یک قاضی فرانسوی ، قاضی بخش جین لوئیر بروقویره قتل شاپور را بررسی و تحقیق کرد. 4 . او نتیجه گرفت که بویر احمدی، راد و آزادی قتل شاپور را ترتیب و انجام داده اند و ایران مسئول این قتل است. جزئیات در 22

14. بروقویره دخالت ایران را در توطعه قتل شاپور مطابق فوق توصیف کرد. در 29 ماه مه سال 1991 ، در تهران دو پاسپورت به وکیلی راد و آزادی تحت اسامی کمال حسینی و نوریان داده شد. دو مقام مسئول عمومی ایرانی صاحبان پاسپورت ها از سازمان دهندگان یا از هماهنگ کنندگان دو قاتل شاپور بودند. قاضی بروقویره گزینه دومی را

---

سیستم قضایی فرانسه از سیستم قضایی ایالات متحده امریکا متفاوت است. در فرانسه قضات بخش برای تحقیق در مورد جنایات استخدام شده اند. در موارد شامل تروریسم قاضی بخش یافته ها و شاهد ها را بررسی و امتحان می کند و سپس نتیجه را به "کمیسیون بازجویی" برای پیدا کردن فردی که در قتل مقصر است، ارائه می دهد. در انتهای بازجویی ، قاضی بخش ، گناهکار بودن یا بی گناهی متهم را تعیین می کند و پرونده تحقیق را به وکیل دولتی می فرستد که گزارشی را که *شرط لازم برای توقیف و مصادره* خوانده می شود، که با دادگاه بخش حکم می دهد که پرونده را به بخش خاصی از دادگاه استیناف بفرستد ، که در آن زمان پرونده شاپور که *Chambre D`Accussation* نامیده شد و با هماهنگی سه قاضی هیئت تهیه شده بود. اگر سه قاضی هیئت بررسی با یافته ها و معلومات در مورد یک پرونده موافقت کنند ، گزارش به *دادگاه Assizesi* فرستاده می شود که تعیین می کند که متهمین آزاد یا زندانی شوند و حکم را قرائت می کند. وکلای نماینده قربانی یا خانواده قربانی حق دسترسی به پرونده تحقیق را دارند و بعد از انجام بازرسی قاضی بخش حق درخواست وقفه در جریان پرونده را دارند. اگر وکلا با نتایج و تصمیمات اتخاذ شده در پایان بررسی موافقت نکنند ،آنها می توانند به این تصمیم استینافی به دادگاه استیناف بدهند. قاضی بورقویره که قتل شاپور را بررسی و تحقیق کرده است ، قاضیی است که که پرونده های تروریسم را در فرانسه رسیدگی می کند و او در مورد پرونده های تروریسم ایرانی تخصص دارد. را قی یافته ها و اطلاعات 20.

را با ملاحضه اینکه در ماه ژوئن و ژوئیه سال 1991 نمایندگان سرویس های شخصی ایرانی با درجه بالا ـ تجار و اعضا و کارمندان کنسولی ایرانی ـ بیشتر با قتل ها ارتباط داشته اند. جزئیات. در اواسط ماه ژوئن سال 1991 ، حسین شیخ عطار ، عضو سرویس غیرنظامی مخابرات ایران ، توسط سید هندی5 ترتیب تهیه ویزا برای راد و آزادی را از شرکت فرانسوی سایفاکس ـ که برای تایید ویزای آنها لازم بود، داده است. در همان زمان شوریده شیرازی ، یک تاجر ایرانی وشخص مقام ترتیب ورود ناصر قسمی نژاد به سوییس را برای تسهیل فرار قاتلین را داده است. جزئیات. در 16 ماه ژوئیه سال 1991 اداره دولتی جمهوری اسلامی ایران حکم وظیفه ای برای زین العابدین سرحدی فرستاده که او بین 21 ماه ژوئیه و 21 اکتبر سال 1991 در سوییس باشد. سرحدی کارمند اداره دولتی ایران بود و ، او شخصا به قسمی نژاد و آزادی کمک کرد. همچنین قاضی بورقویره این موضوع را که" توطئه با عملکرد [ اداره مخابرات ایران] در موقع هماهنگی برای فرار قاتلین صورت گرفته بود. جزئیات. توطئه هدف جنایت برطبق الگوی سه قطبی سازمان داده شده بود:

اداره مخابرات ایران[ سازمان پخش جمهوری اسلامی ایران] اداره دولتی. جزئیات.قاضی بورقویره همچنین که قاتلین قبل از ورود به فرانسه در ترکیه لوازم کمکی برای قتل شاپور را دریافت کرده اند و

---

5 برطبق نظر قاضی بورقویره اگر هندی عضو سازمان پخش جمهوری اسلامی ایران نبود او ارتباط نزدیکی با این سازمان داشت. تحقیق و بررسیهای قاضی بورقویره همچنین روشن ساخت که شماره تلفن خصوصی منشی صوتی رئیس اداره ارشاد و امنیت جمهوری اسلامی ایران در دستگاه تلفن سازمان دهنده هندی وجود دارد. یافته های رافی 22n5.

6 شوریده سابقه آگاهی و آشنایی با سرویس شخصی عالیرتبه در دولت ایران داشت و با رهبران و مقامات ایران در تماس بود.

و مقامات اطلاعات و امنیت ایرانی در این مورد توطئه دست داشته اند. جزئیات. این حقیقت باعث شد که قاضی بورقویره پرونده " مشارکت سازمان اطلاعات و امنیت ایران را در عملکرد و طرح ریزی توطئه های جنایی حقیقی " دریابد.جزئیات

15. *Chambre D`Accussation* (هیئت محکوم کننده) و قاضی بورقویره قبول کردند که سرویس اطلاعات و امنیت ایران در پشت این قتل است. جزئیات در 23. درسال 1995 دادگاه *Assizes* بعدا سه متهم را بخاطر قتل محکوم کرد. جزئیات . در طی بازجویی دادگاه *Assizes* وکیل خانواده بختیار اظهار داشت که او با مقام ایرانی گمنام که آنها را "شاهدان C" می نامد گفتگو کرده است. شاهد C یک مقام ایرانی بود که بخاطر فساد و تقلب محکوم شده بود و پرونده او در آلمان در رابطه با قتل هایی با حمایت ایران درسال 1992 درحال بررسی بود. وکیل مدافع اعلام داشت که شاهد C گفت که MOIS قتل شاپور را سازمان داده بود.جزئیات در 24.

16. بعلاوه ، هم *Bundeskriminalamt* که معادل آلمانی دفتر فدرال تحقیق و بررسی و اداره دولت ایالات متحده امریکا تعیین کردند که ایران مسئول قتل شاپور می باشد. جزئیات در 25

### D. شاکی ها و رابطه آنها با شاپور

17. شاهین تاج ساکن کالیفرنیا ، همسر نجات یافته شاپور است.او شکایت را از طرف خود و نمایندگان وراث شاپور بختیار ارائه کرده است.شاهین تاج مادر پسر شاپور ، قدرت است.شاهین تاج همچنین مادر دختر خوانده شاپور، منیژه است.

18. شاپور هرگز منیژه را به فرزندخواندگی خود نکرد.شاپور می خواست که منیژه را به فرزندخواندگی خود قبول کند و درمورد انجام آن بررسی می کرد، اما توسط وکیل خود مطلع شد که نمی تواند منیژه را به فرزندخواندگی خود قبول کند چون منیژه بیش از شانزده سال دارد.اما ، شاپور این کار را انجام داد ، مقداری کمک مالی برای منیژه ، مانند تامین هزینه های مدرسه و تحصیل او را فراهم کرد.

19. شاهین تاج، قدرت و منیژه در زمان قتل بختیار، شهروند ایالات متحده امریکا بودند ، و آنها هنوز شهروند ایالات متحده امریکا هستند.

20. مرگ شاپور شاهین تاج را عصبانی و بی قرار کرد. او دریافت که شاپور را مانند شوهر محبوب خود می دانسته ، واز زمان مرگ شاپور، او لباس سیاه پوشیده است، و او تمایلی به ازدواج دوباره یا روابط دیگری نداشته است. قدرت اظهار کرد که هیچ خاطره ای از مرگ پدر نداشته ، اما او بخاطر می آورد که پنج یا شش ساله بوده و برای شاپور گریه می کرده است. منیژه اظهار داشت که او با مرگ بختیار فوق العاده ناراحت و بی قرار بوده است ونتیجه مرگ وی را تا خودکشی برده است.

## II. نتیجه و تصریح قانون

21. به عنوان یک قانون عمومی ، قانون مصونیت رهبران خارجی("FSIA") که از سال 1976 اجرا شده ، کشورهای خارجی را از شکایت بر علیه خود در دادگاه های ایالات متحده امریکا مصون کرده است. 28 U.S.C §1604.تعدا محدودی استثنا در این قانون مصونیت وجود دارد که شامل استثناهای کشورهای حامی تروریسم می شود. (7)28 U.S.C § 1605(a)

## A . درخواست برای مستثنی کردن کشورهای حامی تروریسم

22. مستثنی کردن کشورهای حامی تروریسم این مفهوم را ایجاد می کند که" نباید یک کشور خارجی را از احکام قضایی دادگاه های ایالات متحده امریکا یا ایالات  در صورتی مصون کند"، موقعی که غرامت مالی خواسته می شود و معیارهای فوق صادق می باشند،(7)28 U.S.C § 1605(a)  که معیارهای تعیین شده درقانون (7)28 U.S.C § 1605(a) مطابق فوق هستند:

---

7 قانون 28 U.S.C § 1604 بیان می کند :
با توجه به موافق های بین المللی موجود که ایالات متحده امریکا یک طرف مهم در موقع اجرای این قانون بوده که کشورهای خارجی باید از احکام قضائی دادگاه های ایالات متحده امریکا و دادگاه های ایالتی مصون باشند بجز موارد ارائه شده در بخش های 1605 تا 1607 این بخش.

(A) زخم و جراحت یا مرگ در نتیجه شکنجه، کشتن بدون قضاوت عادلانه ، خرابکاری در هواپیما، گروگان گیری، یا تهیه مواد یا منابع حمایتی و کمکی:

(B) عمل انجام شده توسط کشور خارجی یا عاملان آن کشور،

(C) کشور خارجی به عنوان کشور حامی تروریسم در زمان حمله تروریستی یا بعد از آن در نتیجه آن عمل شناخته شود،

(D) شاکیان یا قربانیان در زمان واقعه شهروند ایالات متحده امریکا باشند،

23. شاکیان یا خوانده ها بایستی "ادعا یا درخواست خود را برای غرامت با ارائه شواهد مناسب به دادگاه ابراز کنند." 28 U.S.C § 1608(e)

24. استثنای کشورهای حامی تروریسم به عمل فعلی و آنی اطلاق می شود. FSIA "کشتن بدون قضاوت عادلانه" را که در بخش 3 محافظت از قربانیان شکنجه تعریف می کند. قانون سال 1991 ("TVPA") .28 U.S.C § 1605(e)(7). TVPA کشتن غیرعادلانه را به عنوان "کشتن بیرحمانه تایید نشده بدون قضاوت قبلی توسط دادگاه معمولی که همه اصول قضاوت و قانونی را که توسط انسان های متمدن لازم شناخته شده را مراعات کند . اما چنین واژه ای ، شامل هرگونه کشتن طبق قانون های بین المللی که که بطور قانونی طبق تایید ملت خارجی نمی شود."نکته 8 .28 U.S.C § 1350 قتل شاپور مطابق این تعریف می باشد. قتل بیرحمانه و بطور افراطی وسواسی طراحی شده بود. شاپور "هیچ مخالفتی

─────────────

8 بخش 1605(a)(7) همچنین بیان می کند که اگر این عمل در خاک کشور مدافع انجام شده ، کشور خارجی باید فرصت قانع کننده ای برای داوری و حکمیت به کشور خارجی داده شود. چون قتل در فرانسه و نه در ایران انجام شده ، این موضوع مورد درخواست نمی باشد.

با عملکرد قوانین موجود در ایران نداشت". الهی و، جمهوری اسلامی ایران، 124 F متمم 107 ,97 d2 (2000 .D.D.C) . بعلاوه " قتل برخلاف مفاهیم انسانی که هم در قوانین ملی و هم بین المللی شناخته شده است ، انجام شده بود". جزئیات (معیار بندی داخلی حذف شده است).

25. حقایق ارائه شده بطور واضحی این موضوع را نشان می دهند که شاپور علنا و بطور مخصوصی برای قتل از طرف مقامات و عوامل ایرانی مورد حمله قرار گرفته است. همچنان که در یادداشتهای رافی ذکر شده " قضات ایران را در همه موارد و پرونده ها مقصر شناخته اند که دخالت ایران... در همه اعمال تروریستی خیلی کمتر بطور مستقیم می باشد و فقط در تامین حمایت و منابع برای گروه های تروریستی عمل می کند".

یافته های رافی 18، ( معیار گذاری الهی ،124F، متمم دوم در 108) . چون ایران بطور مستقیمی در قتل شاپور دخالت داشت ، خواهان و شاکی ها متقاعد شده اند که یک دولت خارجی مسئول قتل بختیار بوده است.

26. ایران از سال 1984 میلادی به عنوان کشور حامی تروریست ها شناخته شده ، بنابراین آن از زمان قتل شاپور در سال 1991 که شاکیان و خواهان شکایت فوری بر علیه آن تهیه کردند به این عنوان مشخص وشناخته شده است.

27. شاکی ها و خواهان اظهار کرده اند که آنها در زمان قتل شاپور شهروند ایالات متحده امریکا بوده اند. واژه " شهروند ایالات متحده امریکا " شامل همه شهروندان امریکایی می شود. (22)(a)1101 § C.S.U 8. شاهین تاج، منیژه و قدرت در همه مواقع مربوطه شهروند ایالات متحده امریکا بوده اند.

**B. علت و دلیل این عمل**

28. بخش (7)(a)1605 درباره قانون مستثنی کردن کشورهای حامی تروریسم در FSIA " کاملا یک شرط اعطای صلاحیت قضایی است که به هیچ صورت دیگر علت عمل بر علیه کشور خارجی یا عاملان آن را منتفی نمی کند".*v Cicipio-Puleo* ، *جمهوری اسلامی ایران* ، 353 F 3d.

9) 1024,1032 (D.C.Cir, 2004) ، براین منوال ، در صورت انجام عملی ،برای تعیین چه علتی باعث اعمالی می شود، می تواند قانون مصونیت کشورها تحت فشار گذاشته شوند، FSIA دادگاه ها و محاکم را به سمت علل موجود قبلی اعمال ، مانند قانون کیفری یا عمومی ایالتی رهنمون می شود.-Cicipio Puleo, 353F .3d در 1036، هلند و .جمهوری اسلامی ایران ، 496F، متمم . 2d, 1,23 (D.D.C.2005) .

29. خواهان و شاکی ها فقط علت عمل را مطابق قانون کالیفرنیا برای تحمیل ترس و ناراحتی عاطفی بین المللی می توانند مورد تحقیق و بررسی قرار دهند.10

## C. تحمیل ترس و ناراحتی بین المللی طبق قوانین کالیفرنیا

30. طبق قوانین کالیفرنیا ، علت عملی برای ایجاد ترس و ناراحتی عاطفی بین المللی ("IIED") مطرح می کند که متهمان رهبری اعمال " تجاوزکارانه ووقیحانه ای را به صورت عمدی یا سهوی عهده دار بوده اند و این عمل در خارج از حدود شایستگی و نجابت انسانی می باشند." *Christensen v سرپرست* (Cal,1991) 203, *Ct, 820, P ,2d* 181 . برای جبران IIED خواهان و شاکی ها باید مراتب فوق را نشان داده و اثبات کنند: (1) رهبری تجاوزکارانه و افراطی از طرف متهمان با توجه به علت، یا سهوی بدون توجه به محتمل بودن علت ، ناراحتی عاطفی ، (2) رنج شدید خواهان و شاکی از ناراحتی عاطفی شدید یا افراطی ، و (3) علت انجام حقیقی یا نزدیک ایجاد ناراحتی عاطفی با رهبری تجاوزکارانه ووقیحانه متهمان. *Davidson v شهر وست مینستر* ،(Cal, 1982) 901 , 894 P 2d 649

---

9 هنگامی که کنگره قانون §1605A را در ماه ژانویه 2008 به مرحله اجرا می گذاشت، بطور مخصوصی از شاکیان و خواهان خواستار فراهم کردن علت اعمالی برعلیه دولت خارجی شد. بنابراین ، §1605A برخلاف §1605(a)(7) فقط "تایید مواضع قانونی موجود" نیست. شاکی ها و خواهان سعی نکرده اند که شکایت خود را برای ارائه علت عمل طبق قانون §1605A ترمیم کرده و بهبود بخشند.

10 بازجویی در مورد غرامات ، خواهان و شاکی ها ابراز کرده اند که علل بسیار زیادی برای اعمالی از قبیل مرگ و قتل از روی اشتباه ارائه کرده اند. دادگاه به خواهان و شاکی ها راهنمایی کرده که یافته ها و معلومات واقعی ارائه شده و نتیجه قانونی آنها را تایید کنند و مخصوصا علل اعمال را که آنها مطرح کرده اند مشخص کنند. دراین یافته های ارائه شده حقیقی و نتیجه قانونی ، خواهان ابراز کرده اند که آنها فقط بر قانون " علل اعمال تحت قوانین کالیفرنیا تخطی بین المللی در مورد ترس و ناراحتی عاطفی " توسل و اتکا کرده اند.یافته های ارائه شده تکمیلی حقایق و نتیجه قانونی[43#]17 .

*1. رهبری تجاوزکارانه و وقیحانه انجام شده بر علیه شاکی و خواهان*

31 در این مورد تردیدی وجود ندارد که قتل شاپور توسط خوانده ها یک عمل تجاوزکارانه و بیرحمانه بود، همینطور در این مورد تردیدی وجود ندارد که آن بر علیه شاپور ترتیب داده شده بود. اما با وجود این اینجا یک شکی وجود دارد که آیا ، با قتل شاپور می خواستند باعث ناراحتی و اضطراب عاطفی در اعضای خانواده شاپور بشوند، که آنها مدعی و خواهان این پرونده هستند.

32 دادگاه ها در این حوزه در مورد حملات تروریستی یک وضعیت ثبات و هم رایی دارند ـ که با توجه به طبیعت آن ـ که نه فقط بر علیه قربانیان بوده بلکه بر علیه خانواده قربانیان هم بوده است. *سالازار و ، جمهوری اسلامی ایران ،* 370F، متمم (D.D.C.2005) 2d 105, 115 n 12 ( بررسی و تحقیق ساینینگ بورنت و ال بارکا و شرکت بخش 274F، متمم (D.D.C.2003) 2d 86 , 107، جنکو وی ، جمهوری اسلامی ایران ، 154 F ، متمم (D.D.C.2001) 2d 27 ,35. دادگاه هیچ دلیلی نمی بیند که چرا این موارد منطقی طبق قانون کالیفرنیا انجام نشود. اویسی و را ببینید، جمهوری اسلامی ایران ، 498 F متمم (D.D.C.2007). 2d 268 ,282. ( درک این مسئله که طبق قانون کالیفرنیا ، یک حمله تروریستی عملی بر علیه خانواده های قربانیان به منظور ادعای یک IIED می باشد). بنابراین دادگاه این موارد را چنین نتیجه گیری می کند که با قتل شاپور ، خوانده ها قصد داشتند که اضطراب و ناراحتی عاطفی در شاهین تاج و قدرت که همسر و پسر شاپور بودند ایجاد کنند.

33 اما با وجود این، دادگاه نمی تواند این مسئله را نتیجه گیری کند که خوانده ها و متهمان قصد ایجاد ناراحتی و اضطراب عاطفی در منیژه که او دخترخوانده شاپور بود ایجاد کنند. "برای دلایل عملی ، حتی در پرونده های تروریسم ، دادگاه ها بررسی اعضای معین خانواده را به عنوان قربانیان مستقیم متوقف کرده اند". *اویسی* 498 F ، متمم 2d در 282(مورد نوه قربانی مستقیم نمی باشد).*همچنین بئیس وی را ببینید، جمهوری اسلامی ایران،* (D.C.Cir. 2003) 334-35 ,325 3d . F 315 ( موارد دختر خواهرها و پسرخواهرها قربانی مستقیم نمی باشند) خواهان و مدعی پیشنهاد می کنند ـ این دادگاه موافقت می کند ـ که برای تعیین اینکه آیا منیژه به عنوان اعضای خانواده تلقی می شود ـ و بنابراین یک

قربانی مستقیم — برای منظورهای ادعای یک IIED می باشد، این دادگاه باید کد گواهی انحصار وراثت ایالت کالیفرنیا را ملاحضه کند. اویسی را ببینید،498 F، متمم 2d در 83-282(ملاحضه کد انحصار وراثت ایالت کالیفرنیا که فرزند ارشد می تواند در موقعیت ادعای درخواست برای IIED بیاید)، ماترک ووراث هایس، 446 F، متمم 10-309(D.D.C.2006 ، 229 2d ( این مورد که براساس کد انحصار وراثت کالیفرنیا، پدر ومادر ناتنی نمی توانند طبق این ادعا درخواست IIED را بکنند).

34. کد انحصار وراثت کالیفرنیا این موضوع را مطرح می کند که فرزند خوانده در موارد وراث بدون وصیت برطبق روابط فرزندخوانده با والدین ناتنی خود به عنوان عضو خانواده محسوب می شود: (a): که با دوره صغیر بودن شخص آغاز می شود و تا زمان بالغ شدن او ادامه می یابد ووالدین پرورش دهنده طفل یا والدین ناتنی، و (b) پدرومادر ناتنی این فرد را از طریق موارد قانونی به فرزندخواندگی قبول کرده اند. Cal، امتحان ، کد 11. 5454§

35. وقتی که منیژه صغیر بود شاپور پدرخوانده او شد، بنابراین روابط پدرخوانده/ فرزند خوانده دراین مورد از زمان صغیرکودکی منیژه شروع شده است.

36. اما با وجود این، هیچ مانع قانونی برای قبول فرزند خواندگی منیژه وجود نداشت. اینجا خواهان قبلا اعلام کرده اند که مانع قانونی در راه قبول منیژه به فرزند خواندگی وجود داشت چون شاپور می خواست منیژه را به فرزند خواندگی قبول کند و می خواست، ولی برای انجام این کار وکیل شاپور به او گفته بود که نمی تواند بعد از این منیژه را به فرزند خواندگی قبول کند چون او به شانزده سالگی وارد شده بود.به بیان دیگر ، خواهان ابراز می کنند که به دلیل توصیه نادرست که از طرف وکیل یک مانع قانونی ایجاد شده است.

37. توصیه نامناسب و نادرست قانونی" مانع قانونی" را موجه نمی کند.یک " مانع قانونی" موقعی ایجاد می شود که بنا به مواردی در قانون انجام فرزند خواندگی نتواند انجام بگیرد. برای مثال ، موانع قانونی شامل افت در وضعیت بیولوژیکی والدین ، قبول فرزند خواندگی از طرف همسر ، یا رضایت فردی که به فرزند خواندگی قبول می شود، "محدودیت ، فقط قبول فرزندخواندگی از طرف یکی از والدین برای اشخاص غیر مربوط

———————————

11 وجود این مورد قبلا در  Cal تست ، کد6408§ کدگذاری شده است.

در سال و موارد لازم برای قبول فرزندخواندگی فرد بالغ [ ] باید [ در] بهترین علائق [ شخصی که می خواهد به فرزند خواندگی قبول شود] ودر علائق عمومی منعکس شود. *وراث ژوزف* 949 P 2d (Cal .1998) 479, 472,( قیمت گذاری ماترک کلیوند ، Cal )10 n 596, , 590 Cal, Rptr. 2d 22 Ct. درخواست . 1993)( تغییر مورد اولیه) ، بعلاوه این مانع قانونی باید " در تمام زندگی به هم پیوسته باید ادامه داده شود... ( نه فقط] در موقعی که فرزندخواندگی قبول یا از طریق قانونی انجام می شود"*وراث ژوزف* ، 2d.P 949 در 477 . چون هیچگونه مانع قانونی برای قبول فرزند خواندگی منیژه وجود نداشت ، لذا خواهان در معرفی منیژه به عنوان عضو خانواده به کد انحصار وراثت کالیفرنیا که می توانست امتیازی برای آنها محسوب شود شکست خوردند.12. بنابراین در موقعی که شاهین تاج و قدرت می توانستند ادعایی برای IIED پر کنند منیژه نتوانست غرامتی برای IIED بگیرد.

*2. ناراحتی و اضطراب شدید عاطفی*

38. طبق قوانین کالیفرنیا ، خواهان نمی توانند تقاضای غرامت برای [IIED] بکنند مگر اینکه ناراحتی و اضطرابی که از آن رنج می برند، شدید باشد" *هایلی وی و سرویس دکترهای کالیفرنیا،* 69 Cal .Rptr.3d 789 , 808 (Cal. Ct. App. 2007) ناراحتی و اضطراب عاطفی شدید به معنی ، ناراحتی عاطفی مانند تعداد واقعی یا تحمل کیفیتی که هیچ انسام منطقی در جامعه متمدن امروزی می تواند آن را تحمل کند."*فلچر وی و بخش زندگی ناتل* 90 ,78 ,Rptr , Cal 89 Co(Cal .Ct. App. (1970)(اتکا به بیانیه (دوم ) §46 Tort)." ایجاد ناراحتی و اضطراب عاطفی می تواند شامل ناخشنودی وواکنش روانی مانند ترس ناگهانی

---

12 یک پرونده قانونی وجود دارد که طبق قوانین کالیفرنیا ، برای جبران شبه جرم غفلت و مسامحه تخطی ناراحتی و اضطراب ، خواهان و شاکی یک عضو خانواده کنونی ندارد. بجای آن ، خواهان اگر روابط مناسب نزدیکی را با فرد مورد نظر نشان دهد می تواند تقاضای غرامت بکند. *کریونتسوو وشرکت تاکسی رانی سان رافائل* ،(1986.Cal.Ct.App), 769 ,768 ,Rptr. Cal 229 . اما با وجود این ،شبه جرم غفلت از تخطی ناراحتی و اضطراب عاطفی " کاملا متمایز" از شبه جرم توطئه عمدی برای ناراحتی و اضطراب . *Coon v, ژوزف* ، (1987 ,App ,Ct ,Cal)875 ,873 ,Rptr ,Cal 237

واقعا

غم و غصه ، شرم و خجالت ، تحقیر ، شرمندگی ، عصبانیت ، دلتنگی و رنجش، ناامیدی و نگرانی باشد". جزئیات در 91 . دادگاه باید موقع تعیین شدت این موارد "مدت دوره ناراحتی و اضطراب عاطفی" را ملاحضه کند.

39.شاهین تاج نشان داده است که از ناراحتی و اضطراب شدید روانی و عاطفی در نتیجه قتل شاپور رنج برده است. شاهین تاج ثابت کرده که از زمان مرگ شوهر خود لباس سیاه پوشیده و تمایلی به ازدواج و روابط دیگر نداشته است. به بیان دیگر شاهین تاج از غصه و ناراحتی زیاد و طولانی مدت از زمان عمل متهمان رنج برده است13.

40. اما با وجود این ، خواهان و شاکیان قدرت یا شاپور نشان نداده اند که از ناراحتی و اضطراب روانی و عاطفی در نتیجه قتل رنج می برند. قدرت ثابت کرده که موقع مرگ پدر خیلی کوچک بوده و هیچ خاطره ای از پدر خود به یاد ندارد.چون بخاطر شاپور ، خواهان و شاکیان هیچگونه ناراحتی و اضطرابی در نتیجه قتل و موقع آن نشان نداده اند. بنابراین ، دادگاه قادر به پیدا کردن هیچگونه اضطراب و ناراحتی عاطفی و روانی نشده که شاپور از آن رنج می برده است.

*3. روابط اتفاقی*

41. در آخر خواهان و شاکیان باید نشان می دادند که قتل شاپور بطرز زیاد و نزدیکی باعث ناراحتی و اضطراب روانی در این مورد شده است. به عنوان نتیجه بررسی و آنالیز موارد ارائه شده در بالا، شاهین تاج تنها کسی از خواهان و شاکیان است که می تواند از غرامت جبرانی برای IIED استفاده کند. هیچ شکی در مورد ─────────────────────

13 شاهد واقعی منیژه همچنین از اضطراب و ناراحتی روانی و عاطفی شدید در نتیجه مرگ شاپور رنج برده است.برای مثال او در وضعیت خودکشی بوده است. اما برای دلایل بحث شده در متن سایرا او نمی تواند هیچگونه ادعایی برای IIED داشته باشد.

14. قدرت ثابت کرده است که او پنج یا شش ساله بوده و پیش مادر خود گریه می کرد و پدرش را می خواست. او همچنین ثابت کرد که بدون سرپرستی پدرخود بزرگ شده ، چون "چیزهایی را فقط یک مرد می توانسته به مرد دیگر یاد دهد ".جلسه بازجویی 2-61:1 Tr 27 نوامبر سال 2007. این شرایط برای نشان دادن ناراحتی و اضطراب روانی و عاطفی نامناسب است.

اینکه قتل باعث ناراحتی و اضطراب روانی و عاطفی او شده وجود ندارد، قتل شاپور باعث شده که او احساس عمیق از دست دادن پدر  و غم وغصه را تجربه کند.

## D. جبران غرامات

42. " در تعیین مقدار مناسب جبران غرامات [د]ادگاه باید، تصمیمات قبلی در مورد اعطای غرامت به درد و رنج ها  و آنهایی که غرامات را برای شکنجه دریافت کرده اند ببندازد". *وراث هایس* ، 466F متمم ، d2 در 269 ببندازد.وقتی که از دست دادن کسی احساس می شود...بطور غیر قابل انکاری برای تهیه معادل آن مشکل است ، دادگاه بطور نمونه بین 8 میلیون تا 12 میلیون دلار برای غرامت درد و رنج از دست دادن شوهر اعطا می کند. جزئیات

43. دادگاه این تصمیم نهایی را اتخاذ می کند که در نتیجه عمل متهمان ، رهبری اشتباه ونادرست ، شاهین تاج رنج برده و درد و  غصه ودلتنگی روانی خواهد داشت. شاهین تاج ثابت کرده که او و بختیار زن وشوهرهای نمونه بوده اند که هرروز لباس سیاه می پوشد و تمایلی به روابط دیگر نداشته است. در نتیجه دادگاه به شاهین تاج 12 میلیون دلاربرای جبران غرامت برای غصه و رنج او پرداخت.

## E. غرامات کیفری

44. طبق پورسانت به این یادداشتها در حمایت از یافته های حقایق تکمیلی ارائه شده [45#] خواهان صدمات کیفری طلب کردند. خواهان در طلب اول در طلب غرامات کیفری نبودند چون قبل از به مرحله اجرا درآمدن قانون رسمیت دفاع ملی برای سال مالی 2008 نشریه L شماره 1083, §110-181موقعیت (2008)344-338 ,3 ,122 غرامات کیفری نمی توانست کارهای جبرانی بر علیه یک کشور خارجی اعمال شود. به تازگی طبق قانون جدید تصویب شده (c)1605A § U.S.C. 28 برای خواهان حق خصوصی اعمالی برای " جراحت شخصی یا مرگ" برعلیه کشورهای خارجی فراهم می کند و به خواهان امکان می دهد که صدمات و زیان های کیفری را طبق این قانون علت عمل جبران کنند.

45. اما با وجود این خواهان برای بهبود و توسعه شکایت خود برای انجام قانون علت عمل طبق قانون 1605A§ اقدامی نکرده اند.چون خواهان و شاکی قانون علت عمل را بر علیه ایران تحت قانون 1605A(c )§   انجام نداده اند نمی توانند از قانون جبران صدمات کیفری استفاده کنند.

### III. خاتمه

برای دلایل ارائه شده ، شاهین تاج بختیار واجد شرایط دریافت 12 میلیون دلار برای جبران صدمات برای IIED بخاطر قتل شاپور بختیار شد. قدرت بختیار، منیژه اسد بختیار ووراث شاپور بختیار واجد دریافت هیچگونه غرامتی نشدند. حکم مناسب و مویدی هم همراه این یادداشت ها می باشد.

هنری ه کندی جر
قاضی حوزه دادگاه ایالات متحده امریکا

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAHINTAJ BAKHTIAR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendants. | Civil Action 02-00092  (HHK) |

### ORDER

Shahintaj Bakhtiar has established her claim of right to relief in this action by evidence that is satisfactory to the court, as required by 28 U.S.C § 1608(e).  Goudard Bakhtiar, Manijeh Assad Bakhtiar, and the Estate of Chapour Bakhtiar have not so established their claims of right to relief.  Accordingly, it is this 16th day of July 2008 hereby

**ORDERED AND ADJUDGED** that, with respect to the claims asserted by Shahintaj Bakhtiar, judgment is entered in favor of Shahintaj Bakhtiar and against the Islamic Republic of Iran and the Iranian Ministry of Information for $12,000,000; and it is further

**ORDERED AND ADJUDGED** that, with respect to the claims asserted by Goudard Bakhtiar, Manijeh Assad Bakhtiar, and the Estate of Chapour Bakhtiar, judgment is entered in favor of the Islamic Republic of Iran and the Iranian Ministry of Information and Security and against Goudard Bakhtiar, Manijeh Assad Bakhtiar, and the Estate of Chapour Bakhtiar.

Henry H. Kennedy, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAHINTAJ BAKHTIAR, et al., | |
| **Plaintiffs,** | |
| v. | Civil Action 02-00092  (HHK) |
| ISLAMIC REPUBLIC OF IRAN, et al., | |
| **Defendants.** | |

## MEMORANDUM

This action is brought pursuant to the state-sponsored terrorism exception of the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7),[1] by Shahintaj Bakhtiar

("Shahintaj"), who is the widow of Chapour Bakhtiar ("Chapour"), individually and as a

representative of Chapour's estate, Chapour's son Goudard Bakhtiar ("Goudard"), and Chapour's

stepdaughter Manijeh Assad Bakhtiar ("Manijeh") against the Islamic Republic of Iran and the

Iranian Ministry of Information and Security ("MOIS"), which is Iran's intelligence agency.

Chapour is the former Prime Minister of Iran, and this action arises out of his August 6, 1991,

assassination  This court entered default against defendants on April 3, 2007, and held a

damages trial on November 27, 2007. At the trial, the court took judicial notice of the findings

---

[1] Plaintiffs brought suit under 28 U S C § 1605(a)(7). Pursuant to the National Defense Authorization Act for Fiscal Year 2008, Pub L. No 110-181, § 1083, 122 Stat 3, 338-44 (2008) ("National Defense Act"), 28 U S C § 1605(a)(7) was replaced by 28 U.S C § 1605A Section 1605(a)(7) still applies to actions brought prior to the effective date of 28 U S C § 1605A, however. *Simon v Repub of Iraq*, __ F 3d __, 2008 WL 2497417, *4 (D.C. Cir. June 24, 2008) ("the new terrorism exception in § 1605A by its terms does not provide a substitute basis for jurisdiction over all cases pending under § 1605(a)(7) . .  to claim the benefits of § 1605A, the plaintiff must file a new action under that new provision "). Accordingly, this court analyzes plaintiffs' action under 28 U S.C. § 1605(a)(7).

of fact and conclusions of law in *Rafii v. Islamic Republic of Iran and Ministry of Information and Security*, 01-cv-850 (D.D.C. Dec. 2, 2002) ("*Rafii* Findings").[2]  Based upon the *Rafii* findings of fact and conclusions of law and the evidence presented at the damages trial, the court makes the following:

## I. FINDINGS OF FACT

### A.  Iran's Policy of Assassinating Dissidents

1    In 1979, Ayatollah Khomeni became the leader of Iran after leading an insurrection against the Shah of Iran.  *Rafii* Findings 1.[3]  Under Ayatollah Khomeini's rule, Iran adopted a policy of assassinating dissidents at home and abroad.  Iran has been linked to the assassination of leaders from the following Iranian dissident groups:  the Kurdish Democratic Party of Iran, the National Council of Resistance, the Mujaheddin, the National Movement for the Iranian Resistance ("NAMIR"), and the Flag of Freedom.  These assassinations have inhibited the activities of these Iranian resistance groups, as well as the activities of other groups.  *Id.* at 15-17.

2.    Iran's involvement in the assassination of political dissidents waned in the later years of Ayatollah Khomeini's regime.  Beginning in 1989, however, with the end of the Iran-Iraq war and the appointment of Ali-Akbar Hashemi Rafsanjani as President of Iran, there was

---

[2]  In *Rafii*, Chapour's daughter, France Mokhateb Rafii was awarded damages against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, arising out of the assassination of Chapour

[3]  Many of the cites to the *Rafii* Findings are verbatim excerpts.  For ease of reference, the court has not used quotation marks to indicate the verbatim excerpts.  Where the court quotes the *Rafii* Findings verbatim, the court has omitted reference to the internal cites, such as the cites to various exhibits.

2

a rash of assassinations of dissidents abroad, as well as a general period of increased Iranian-sponsored terrorism in general. Dissidents were murdered in Austria, Switzerland, France, German, Iraq, Turkey, and the United States *Id* at 16

3    Iran has admitted that MOIS has engaged in the killing of dissidents  Indeed, Ayatollah Fallahian, who was in charge of MOIS at the time of Chapour's murder, made public comments taking responsibility for the killing of members of foreign-based groups that oppose the Iranian regime  *Id* at 3-4

4.   Since 1984, the United States State Department has designated Iran a state sponsor of terrorism  *Id* at 2

**B.    Chapour Bakhtiar**

5    Chapour earned a Ph.D  in law and philosophy. During World War II, he fought with the French resistance, worked in the labor movement in Iran, and advocated for democracy He could easily have joined the government of the Shah and ascended to the highest offices  *Id.* at 10. Instead, Chapour served in opposition to the regime, often spending time in jail as a result of his political activities  *Id*  In January of 1979, shortly before Ayatollah Khomeini's insurrection, Chapour was appointed Prime Minister of Iran, and he served in that capacity for thirty-seven days. *Id* at 11.

6.   After the fall of the government, Chapour remained popular  This worried Iran's new government and put his life in danger. On May 14, 1979, Ayatollah Kalkhali, a religious judge and chairman of Iran's Revolutionary Court announced in an interview in the Iranian paper *Kayan*, his intention to eliminate "the corrupters on earth," and specifically named Chapour as someone who had incurred the death penalty. *Id* at 12. The phrase

3

"corrupter on earth" indicates that a *fatwa*, or a religious judgment, had been issued for Chapour's death. This *fatwa* instructed Muslims anywhere in the world that they could kill Chapour. Ayatollah Kahlkahli reiterated the *fatwa* on Chapour's life on December 7, 1979 *Id.*

7    After hiding in Iran, Chapour fled to Paris where he founded NAMIR with Dr. Abdul Rahman Boroumand. NAMIR was a major Iranian dissident group based outside of Iran *Id.* at 13

8    In 1980, there was a failed attempt to kill Chapour in Paris. A gunman killed a policeman and neighbor in the attack, but failed to kill Chapour. An individual named Anish Naccache was found guilty of the attack, and the French court found that Naccache was acting pursuant to the order of Ayatollah Khomeini to assassinate Chapour. *Id* at 14

9    After the attempted assassination in 1980, Chapour lived under heavy security. A police truck with policemen was stationed outside his home, and the basement of his house was turned into guard quarters where four special police from the French riot squad lived Bakhtiar restricted his excursions outside his home, and when he did leave his house he was transported in armored cars. His son, Guy Bakhtiar, was a French policeman and was in charge of security for Chapour. Before anyone, including his own family, could visit Chapour, they had to submit to a search and present a passport that was kept by the police until the visitor left. *Id.* at 18

10.   On August 6, 1991, Guy Bakhtiar left Paris on a two-day trip. At approximately 5:00 p m , Chapour received an expected visit from Farydoun Boyerahmadi, a member of NAMIR and a close associate. Boyerahmadi was accompanied by Mohammad Azadi and Ali Vakili Rad. Chapour had never met Azadi or Rad. *Id* at 19

4